AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

**FILED**

**JUL 06 2020**

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of )
)
IN THE MATTER OF THE SEARCH OF INFORMATION )  Case No.   4:20 MJ 7182 SPM
ASSOCIATED WITH SNAPCHAT USER NAME "zhovis" )
THAT IS STORED AT THE PREMISES CONTROLLED BY )
SNAP, INC. )

## APPLICATION FOR A SEARCH WARRANT

I, __SA Joseph Jones, DEA_____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

### SEE ATTACHMENT A

located in the _____ District of _____CALIFORNIA_____, there is now concealed

### SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1); | Distribution of controlled substances and/or possession with intent to distribute controlled |
| 21 U.S.C. § 846 | substances; Conspiracy to distribute controlled substances |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph Jones
Special Agent, DEA
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: ____July 6, 2020____

*Judge's signature*

City and state:  St. Louis, MO

Honorable Shirley Padmore Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Cassandra J. Wiemken, #91586(KY)

## ATTACHMENT A

**4:20 MJ 7182 SPM**

**Property to Be Searched**

This warrant applies to information associated with the Snapchat profile with username:

**zhovis** that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., located at 63 Market Street, Venice, CA  90291.

1

## <u>ATTACHMENT B</u>

**4:20 MJ 7182 SPM**

**Particular Things to be Seized**

**I.    Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., including all content, messages, records, files, logs, transactional data or information that have been deleted but are still available to Snap, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information from September 16, 2019, to May 16, 2020, to the government for each account listed in Attachment A:

(a) All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

(b) All location data associated with the account created, uploaded, or shared by the account;

(c) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(d) All past and current usernames associated with the account;

(e) All records of Snapchat searches performed by the account, including all past searches saved by the account;

(f) All activity logs for the account and all other documents showing the user's posts and other Snap, Inc. activities;

1

(g) All photos and videos uploaded by that account and user ID and all photos and videos uploaded by any user, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(h) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that account and user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(i) All IP logs, including all records of the IP addresses that logged into the account;

(j) The types of service utilized by the user;

(k) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(l) All privacy settings and other account settings, including privacy settings for individual posts and activities, and all records showing which Snapchat users have been blocked by the account;

(m) A list of all of the people that the user follows on Snapchat and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

(n) A list of all users that the account has "unfollowed" or blocked;

(o) All privacy and account settings;

(p) All information about connections between the account and third-party websites and applications; and,

(q) All records pertaining to communications between Snap, Inc. and any person regarding the user or the user's Snapchat account, including contacts with support services, and all records of actions taken, including suspensions of the account.

(r) Any and all cookies associated with or used by any computer or web browser associated with the account, including the IP addresses, dates, and times associated with the recognition of any such cookie;

**Snap, Inc. is hereby ordered to disclose the above information to the United States within 14 days of the date of this warrant**.

## II.     Information to be seized by the United States

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of  Title 21, United States Code, Section 841(a)(1) (distribution of controlled substances and/or possession with intent to distribute controlled substances) and 846 (conspiracy to distribute controlled substances) (collectively "subject offenses"), by ZACHARY HOVIS, from September 16, 2019, to May 16, 2020, including, for each account or user ID identified on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs; communications between ZACHARY HOVIS and others related to overdose deaths and/or drugs transactions or prospective drug transactions; photographs of drugs or money;

(b) Any information or records reflecting associates, accomplices or conspirators;

(c) Any information or records reflecting the sources of supply of controlled substances and individuals involved in the receipt of controlled substances;

(d) Any information or records rental, lease or ownership of vehicles;

(e) Any information or records relating to the acquisition, use, possession, sale or distribution of controlled substances, firearms and money or currency;

(f) Any evidence that indicates the account holder's state of mind as it relates to the crimes under investigation;

(g) Evidence indicating how and when user's account was accessed to determine the chronological context of account use, account access, and events relating to the crime under investigation;

(h) Evidence indicating the account user's state of mind as it relates to the crimes under investigation;

(i) The identity of the person(s) who created the account, including records that help reveal the whereabouts of such person(s).

(j) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(k) Evidence indicating how and when the Snapchat account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Snapchat account owner;

(l) Evidence indicating the Snapchat account owner's state of mind as it relates to the crime under investigation;

(m) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF )
INFORMATION ASSOCIATED WITH )     No. 4:20 MJ 7182 SPM
SNAPCHAT USER NAME "zhovis" THAT )
IS STORED AT THE PREMISES )
CONTROLLED BY SNAP, INC. )          FILED UNDER SEAL
)

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Joseph Jones, Special Agent with the United States Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) and Federal Criminal Procedure 41 for information associated with "**zhovis**" (the "subject account") that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., ("Snapchat") a social-networking company headquartered in Venice, California.   The information to be searched is described in the following paragraphs and in Attachment A.   The requested warrant would require Snapchat to disclose to the United States records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the subject account as further described in Attachment B.

2.      I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) assigned to the St. Louis Division Office.   I have been employed by DEA since May 2012, during which time I have specialized in investigations involving narcotics trafficking.   I received eighteen weeks of training in drug investigations and related legal matters at the DEA Training Academy in Quantico, Virginia.   Coursework at the DEA Training Academy included Drug

1

Identification, Undercover Techniques, Tactical Training, Interview and Interrogation Techniques, and Legal Instruction.  From September 2012 through April 2018, I was assigned to the Laredo District Office in Laredo, Texas.  Since then, I have received additional training in Cyber Investigations, Money Laundering, Asset Forfeiture as well as Clandestine Laboratory certification in Quantico, Virginia.  Additionally, I served as a Field Training Agent and as a member of the Houston Division Special Response Team.  Currently, I am assigned to the DEA St. Louis Division Office in St. Louis, Missouri.  Prior to my employment with DEA, I was a Border Patrol Agent in Laredo, Texas for five years.

3.      While working for DEA, I have worked multiple narcotics investigations involving the interception of wire communications and electronic location data.  Affiant is familiar with the ways in which narcotic traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their use of mobile telephones, email accounts and digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

4.      As a Special Agent I am personally familiar with and have used all normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, interrogation, and undercover operations.  I have personally participated in money laundering and narcotics investigations.  Through such investigations and training, I have become familiar with the patterns of activity of drug traffickers and money launderers; the types and amounts of drugs distributed by drug dealers; the types and amounts of profits made by drug dealers; and the methods, language and terms that are used to disguise the source and nature of their illegal drug dealings.  Based upon my training and experience, interviews I have conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking activity, I am familiar with the ways in which drug traffickers

2

conduct their business, including methods of importing and distributing narcotics, money laundering, the use of satellite phones, cellular telephones and the internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions. Through the course of my duties I have participated in the execution of numerous search warrants.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the subject account, has been used in connection with violations of Title 21, United States Code, Section 841(a)(1) (distribution of controlled substances and/or possession with intent to distribute controlled substances) and 846 (conspiracy to distribute controlled substances) (collectively "subject offenses"), by Zachary Hovis ("HOVIS"), and others known and unknown.  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## **LOCATION TO BE SEARCHED**

7.      The location to be searched is:

Snapchat social media account "**zhovis**" (hereinafter referred to as "Subject Account(s)") located at 63 Market Street, Venice, CA  90291, further described in Attachment A.  The items to be reviewed and seized by the United States are described in Attachment Part II of Attachment B.

## JURISDICTION

8.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO SNAPCHAT

9.     The Internet is in part a computer communications network using interstate and foreign telephone and communication lines to transmit data streams, including data streams used to provide a means of communication from one computer to another and used to store, transfer and receive data and image files.

10.     An "Internet Protocol" (IP) address is a unique series of numbers, separated by a period, that identifies each computer using, or connected to, the Internet over a network.  An IP address permits a computer (or other digital device) to communicate with other devices via the Internet.  The IP addresses aids in identifying the location of digital devices that are connected to the Internet so that they can be differentiated from other devices.  As a mailing address allows a sender to mail a letter, a remote computer uses an IP address to communicate with other computers.

11.     An "Internet Service Provider" (ISP) is an entity that provides access to the Internet to its subscribers.

12.     The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

13.     Snapchat is a mobile application made by Snap Inc. and available through the iPhone App Store and Google Play.  The application provides a way to share moments with photos, videos, and text.  A user takes a photo or video using their camera phone in real-time and

4

then selects which of their friends to send the message to.  Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it is opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

14.     Stories: A user can add a photo or video Snaps to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories.

15.     Memories: Memories is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories.  A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

16.     Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep.  The user can clear the message by tapping it again.

17.     Upon creating a Snapchat account, a Snapchat user must create a unique Snapchat username and an account password.  This information is collected and maintained by Snapchat. A Snapchat username is a unique identifier associated with a specific user on Snapchat, and cannot be changed by the user. On the other hand, a Snapchat vanity name is not a unique identifier and can be set and changed by a user or that user's friends to indicate how the user will

appear within the app.  Unlike a username, a vanity name can contain special characters and symbols beyond hyphen, underscore, or period, as well as spaces, emojis, and capital letters.

18.     Snapchat asks users to provide basic identity and contact information upon registration.  Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Service. Basic subscriber information may include: Snapchat username; Email address; Phone number; Snapchat user vanity name; Snapchat account creation date and IP address; Timestamp and IP address of account logins and logouts.

19.     Snapchat retains logs for the last 31 days of Snaps sent and received, for 24 hours of posted Stories, and for any unopened Chats or those saved by a sender or recipient. The logs contain meta-data about the Snaps, Stories, and Chats, but not the content.

20.     As explained herein, information stored in connection with a Snapchat account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Snapchat user's account activity, IP log, stored electronic communications, and other data retained by Snapchat, can indicate who has used or controlled the Snapchat account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Snapchat account at a relevant time.  Further, Snapchat account activity can show how and when the account was accessed or used.  For example, as described herein, Snapchat logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining

6

the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.   Such information allows investigators to understand the geographic and chronological context of Snapchat access, use, and events relating to the crime under investigation.  Additionally, Snapchat builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Snapchat "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Snapchat account owner.  Last, Snapchat account activity may provide relevant insight into the Snapchat account owner's state of mind as it relates to the offense under investigation.  For example, information on the Snapchat account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

21.     Based on the information above, the computers of Snapchat are likely to contain all the material described above with respect to the **subject account**, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## PROBABLE CAUSE

22.     The United States, including the DEA, is conducting a criminal investigation of HOVIS regarding the commission of the subject offenses, within the Eastern District of Missouri.   This investigation specifically relates to the death of C.W. as well as a drug overdose involving C.H., both of which occurred on November 16, 2019.  As discussed below, both

C.W.'s death and C.H.'s drug overdose appear to have occurred shortly after they purchased drugs from HOVIS.

**November 16, 2019, Death of C.W.**

23.     On November 16, 2019, at approximately 12:45 P.M., St. Peters, MO Police Department officers were dispatched to 6120 Mid Rivers Mall Dr., St. Peters, MO 63376, within the Eastern District of Missouri, where C.W. was found in the driver's seat of her vehicle (2007 black Acura TL) in the parking lot of Dobbs Auto and Tire.  C.W. was unconscious.  She was not breathing.   C.W. was then transported via ambulance to Progress West Hospital located at #2 Progress Point Parkway, O'Fallon, MO 63368.  Investigators were subsequently notified that C.W. died.

24.     While still at the scene (the Dobbs Auto and Tire parking lot), investigators collected and seized a clear plastic micro baggie with blue stamped devil faces on the outside of the bag, consistent with the type often used for the storage of illegal drugs and/or pills.  The micro baggie was located inside C.W.'s purse, within the vehicle.   Investigators also located C.W.'s cell phone (636-362-3336), and examined the phone.  C.W. appeared to have been texting HOVIS at 636-675-5548 regarding a drug transaction.

25.     Investigators determined, based on investigative database records, reveal that 636-675-5548 is associated with HOVIS.  On May 22, 2020, United States Magistrate Judge David D. Noce in the United States District Court for the Eastern District of Missouri authorized a search warrant for precision location information, cell site location information, and other signaling information, associated with cellular telephone 636-675-5548, *i.e.* HOVIS's phone. *See* 4:20 MJ 142 DDN.

26.     Since then, investigators have corroborated HOVIS as the user of 636-675-5548 by monitoring the precise location information in conjunction with physical surveillance.  The

following text messages appear to have been exchanged by C.W.'s phone number and HOVIS's number, a couple of hours before C.W. was found unconscious in her vehicle:

At approximately 10:28 A.M.

- HOVIS: "Yo"

- C.W.: "What"

- HOVIS: "gimmie dome for a bump?"

- C.W.: "no"

- C.W.: "something else"

- HOVIS: "well your broke so there is nothing else"

At approximately 10:32 A.M. to 10:35 A.M.:

- C.W.: "ok"

- HOVIS: "what about something from the whitmoor shack"

- C.W.: "sure"

- HOVIS: "ill be there in 5 okay?"

- C.W.: ok

- HOVIS: "park by the tennis courts"

At approximately 10:42 A.M.:

- C.W.: "ok"

- HOVIS: "omw"

At approximately 10:49 A.M.:

- HOVIS: "pullin up"

- HOVIS: "wya"

At 1050 hours:

- C.W.: "the tennis courts"

Based on my training and experience, HOVIS and C.W. appear to be discussing a drug transaction. Specifically, HOVIS is offering a "bump," *i.e.* illegal drugs, in exchange for a "dome," *i.e.* a sexual act. And, HOVIS further states that because C.W. is broke, there is "nothing else." Given this conversation, in my training and experience as a DEA Special Agent, HOVIS and C.W. are arranging to meet at "tennis courts" so that HOVIS can conduct a drug transaction with C.W.

27.     This interpretation of the text messages is further corroborated by surveillance footage. On November 16, 2019, surveillance footage from the Whitmoor Country Club depicts a black Acura TL sedan and a gray Nissan Versa sedan parked by the tennis courts at the country club, which is in St. Charles, Missouri, within the Eastern District of Missouri. As discussed above, C.W. was discovered unconscious in a black Acura TL sedan. Notably, investigators have determined that HOVIS is the registered owner of a 2014 Nissan Versa sedan, which is consistent with the make, model, and year of the Nissan Versa observed on the surveillance video.

28.     The surveillance footage appears to depict a meeting between both C.W. and HOVIS. Investigators have reviewed HOVIS's Missouri driver's license, which provides a physical description and photograph of HOVIS. Although HOVIS appears to be wearing a hooded sweatshirt in the surveillance footage, the appearance of the man meeting with C.W. is consistent with the appearance and description of HOVIS. And, the time stamps on the surveillance footage are consistent with the text message discussed above; in other words, the meeting appears to have occurred shortly after 10:50 a.m. on November 16, 2019.

29.     Specifically, on the surveillance footage, a female, consistent with the appearance of C.W., and a male, consistent with the physical description of HOVIS, walk up to the Whitmoor Country Club restaurant. C.W. appears to go inside, while HOVIS appears to wait

outside for her.  Shortly thereafter, C.W. exists the restaurant and both C.W. and HOVIS walk back toward their respective vehicles—a black Acura TL sedan (C.W.'s) and a gray Nissan Versa sedan (HOVIS's).

30.     As discussed above, C.W.'s body was found less than two hours after this meeting appears to have occurred.

31.     Investigators subsequently reviewed the medical examiner's report and toxicology results related to C.W.'s death on November 16, 2019.  The toxicology results show, among other substances, the presence of fentanyl in C.W.'s body.  The medical examiner's report reflects the immediate cause of death as fentanyl intoxication.

### November 16, 2019, Overdose of C.H.

32.     On   January 8, 2020, investigators interviewed C.H.

33.     C.H. stated that she purchased three white powder-filled capsules for twenty dollars from HOVIS on November 15, 2019.  C.H. said that HOVIS distributed the capsules to her on November 16, 2019, telling her to, "Be careful."  HOVIS said that the capsules were oxycodone.  C.H. believed that the capsules were oxycodone.  C.H. said that she then snorted one of the capsules later in the day.  C.H. further said that she overdosed, and was treated at St. Joseph Hospital in Lake St. Louis, MO.  C.H. stated that she communicated with HOVIS on Snapchat via the **subject account** the day after her overdose, *i.e.* November 17, 2019.  HOVIS then admitted that he sold C.H. fentanyl and not oxycodone.

34.     Investigators later obtained medical records corroborating C.H.'s statement that she was treated at St. Joseph Hospital for a drug overdose on November 16, 2019.

35.     During the interview with C.H., she also identified an Instagram account utilized by HOVIS as "hoe_vis."  C.H. further stated that HOVIS utilizes his Instagram and the Snapchat **subject account** to display photographs of and/or sell illegal drugs.  In addition to seeking a

warrant for the Snapchat **subject account**, investigators are also simultaneously seeking an Instagram warrant in the United States District Court for the Eastern District of Missouri.[1]

36.     Given C.H.'s statement that she communicated with HOVIS via the **subject account** regarding narcotics, coupled with other facts and circumstances as set out above, there is probable cause to believe that HOVIS has used the **subject account** in connection with the subject offenses.

37.     It is likely that Snapchat still has the requested information.   The **subject account**, after all, still appears to be active.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Snapchat to disclose to the United States copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B.   Upon receipt of the information described in Section I of Attachment B, United States-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

39.     Based on the forgoing, I request that the Court issue the proposed search warrant. The United States will execute this warrant by serving the warrant on Snapchat.   Because the warrant will be served on Snapchat, who will then compile the requested records at a time

---

[1] E.F., a source of information who appears to be an acquaintance of both C.W. and HOVIS, provided screenshots from what appears to be HOVIS's Instagram, discussing the overdose death of C.W.   Specifically, HOVIS first denies distributing drugs to C.W., before stating:   "if she overdosed from me then she would have died in the morning…simple."

convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

41.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I state under the penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

7/6/2020
DATE

Joseph Jones
Special Agent
Drug Enforcement Administration

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this _____ day of July, 2020.

HONORABLE SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

**4:20 MJ 7182 SPM**

**Property to Be Searched**

This warrant applies to information associated with the Snapchat profile with username:

**zhovis** that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., located at 63 Market Street, Venice, CA  90291.

## ATTACHMENT B

### 4:20 MJ 7182 SPM

### Particular Things to be Seized

**I.     Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc., including all content, messages, records, files, logs, transactional data or information that have been deleted but are still available to Snap, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose the following information from September 16, 2019, to May 16, 2020, to the government for each account listed in Attachment A:

(a) All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content;

(b) All location data associated with the account created, uploaded, or shared by the account;

(c) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(d) All past and current usernames associated with the account;

(e) All records of Snapchat searches performed by the account, including all past searches saved by the account;

(f) All activity logs for the account and all other documents showing the user's posts and other Snap, Inc. activities;

(g) All photos and videos uploaded by that account and user ID and all photos and videos uploaded by any user, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(h) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that account and user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(i) All IP logs, including all records of the IP addresses that logged into the account;

(j) The types of service utilized by the user;

(k) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(l) All privacy settings and other account settings, including privacy settings for individual posts and activities, and all records showing which Snapchat users have been blocked by the account;

(m) A list of all of the people that the user follows on Snapchat and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

(n) A list of all users that the account has "unfollowed" or blocked;

(o) All privacy and account settings;

(p) All information about connections between the account and third-party websites and applications; and,

(q) All records pertaining to communications between Snap, Inc. and any person regarding the user or the user's Snapchat account, including contacts with support services, and all records of actions taken, including suspensions of the account.

(r) Any and all cookies associated with or used by any computer or web browser associated with the account, including the IP addresses, dates, and times associated with the recognition of any such cookie;

**Snap, Inc. is hereby ordered to disclose the above information to the United States within 14 days of the date of this warrant**.

## II.    Information to be seized by the United States

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of  Title 21, United States Code, Section 841(a)(1) (distribution of controlled substances and/or possession with intent to distribute controlled substances) and 846 (conspiracy to distribute controlled substances) (collectively "subject offenses"), by ZACHARY HOVIS, from September 16, 2019, to May 16, 2020, including, for each account or user ID identified on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs; communications between ZACHARY HOVIS and others related to overdose deaths and/or drugs transactions or prospective drug transactions; photographs of drugs or money;

(b) Any information or records reflecting associates, accomplices or conspirators;

(c) Any information or records reflecting the sources of supply of controlled substances and individuals involved in the receipt of controlled substances;

(d) Any information or records rental, lease or ownership of vehicles;

(e) Any information or records relating to the acquisition, use, possession, sale or distribution of controlled substances, firearms and money or currency;

(f) Any evidence that indicates the account holder's state of mind as it relates to the crimes under investigation;

(g) Evidence indicating how and when user's account was accessed to determine the chronological context of account use, account access, and events relating to the crime under investigation;

(h) Evidence indicating the account user's state of mind as it relates to the crimes under investigation;

(i) The identity of the person(s) who created the account, including records that help reveal the whereabouts of such person(s).

(j) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(k) Evidence indicating how and when the Snapchat account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Snapchat account owner;

(l) Evidence indicating the Snapchat account owner's state of mind as it relates to the crime under investigation;

(m) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## <u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC</u>
## <u>RECORDS PURSUANT TO FEDERAL RULES OF</u>
## <u>EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Snap, Inc., and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Snap, Inc..   The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Snap, Inc., and they were made by Snap, Inc. as a regular practice; and

b.      such records were generated by Snap, Inc.'s electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Snap, Inc. in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Snap, Inc., and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                                    Signature

1